# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

David Levoyd Reed,

      Plaintiff

v.

State of Nevada, et al.,

      Defendants

Case No.: 2:19-cv-00051-JAD-VCF

**Order Granting Motion to Dismiss and Denying Motion for Leave to Amend**

[ECF Nos. 26, 29, 31]

Pro se prisoner David Reed sues a host of Nevada officials under 42 U.S.C. § 1983 for violating the Equal Protection Clause, alleging that they failed to apply the good-time credits that he earned against his sentence under *Williams v. State of Nevada Department of Corrections*.[1] One of those defendants, Ronda Larsen, moves to dismiss or alternatively for summary judgment, arguing that Reed cannot state an equal-protection claim because he was granted parole before *Williams* was decided, and that she is entitled to qualified immunity.[2] Reed maintains that he hasn't had sufficient time to conduct discovery, so he urges me to deny the motion under Federal Rule of Civil Procedure 56(d).[3] He separately moves to amend his complaint to add a due-process claim.[4] I grant Larsen's motion to dismiss because Reed cannot state an equal-protection claim under his theory and Larsen is entitled to qualified immunity. And I deny Reed's motion for leave to amend his complaint because amendment would be futile.

---

[1] *Williams v. State Dep't of Corr.*, 402 P.3d 1260 (Nev. 2017).

[2] Larsen also argues that Reed's claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

[3] ECF No. 29.

[4] ECF No. 31.

**Background**[5]

      In the early 2000s, Reed was convicted of multiple state-law felonies that carried minimum sentences of 12 and 45 months and maximum terms of 48 and 156 months.[6]  At that time, there were two kinds of criminal laws in Nevada, (1) those that cabined punishment to minimum and maximum terms, and (2) those that included a maximum imprisonment term and the number of years required before a prisoner was eligible for parole.[7]  Nevada's statutory parole scheme affords an inmate a 20-day deduction "from his or her sentence for each month the offender serves."[8]  Those "good-time credits" "[a]pply to eligibility for parole unless the offender was sentenced [under] a statute [that] specifies a minimum sentence that must be served before a person becomes eligible for parole."[9]  "Thus, if the sentencing statute did not specify a minimum sentence that had to be served before parole eligibility, credits should be deducted from a prisoner's minimum sentence, making an inmate eligible for parole sooner than he or she would have been without the credits."[10]

      For years, Reed sought to have his good-time credits applied to his parole-eligibility date.[11]  But the Nevada Department of Corrections (NDOC) refused to do so, applying those credits solely to his ultimate release date.[12]  So in 2016 he filed a petition for a writ of habeas

---

[5] Aside from the discussion of Nevada's sentencing jurisprudence, this is merely a summary of Reed's allegations and should not be construed as findings of fact.

[6] ECF No. 10 at 3 (first amended complaint).

[7] *Williams*, 402 P.3d at 1263.

[8] Nev. Rev. Stat. § 209.4465(1)(c).

[9] *Id.* § 209.4465(7)(b).

[10] *Williams*, 402 P.3d at 1262.

[11] ECF No. 10 at 8–10.

[12] *Id.* at 10–11.

corpus in the state court.[13]  Before the court could resolve that petition, he was granted parole.[14]

Several months later, the Nevada Supreme Court officially announced that sentencing statutes

that define only a minimum sentence to be served, and not a minimum date for parole eligibility,

qualified for good-time reduction.  In *Williams v. State Department of Corrections*, the Nevada

Supreme Court clarified that "[t]he plain language of the sentencing statute" that defines only a

minimum term "does not specify a term that an offender must serve before becoming eligible for

parole."[15]

Armed with *Williams*'s reasoning, Reed sues several Nevada officials, claiming that they

all—either directly or indirectly—played a part in denying the correct application of the law to

his sentence before *Williams* was decided.  Reed alleges that although he brought it up several

times, the officials refused to adjust his sentence and applied good-time credits to only those

inmates with court orders to do so, violating the Equal Protection Clause.

## Discussion

### I.    Legal standard

Federal Rule of Civil Procedure 15(a)(2) directs courts to "freely give leave [to amend]

when justice so requires."  In determining whether to grant leave to amend, courts consider five

factors: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) whether the

plaintiff has previously amended the complaint, and (5) futility of amendment.[16]  The factors do

---

[13] *Id.* at 9.

[14] *See* ECF No. 35 at 6 ("I filed the writ September 29, 2016, and had several of my hearings postponed for no reason and the hearing was conducted July 6, 2017[,] after I was already paroled.").

[15] *Williams*, 402 P.3d at 1263.

[16] *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

not weigh equally, and "[f]utility alone can justify denial of a motion to amend."[17]  An amended

complaint is futile "where [it] would be subject to dismissal" under Rule 12(b)(6).[18]  That

standard requires a properly pled claim to contain enough facts to "state a claim to relief that is

plausible on its face."[19]  This "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation;" the facts alleged must raise the claim "above the speculative level."[20]  In

other words, a complaint must make direct or inferential allegations about "all the material

elements necessary to sustain recovery under *some* viable legal theory."[21]  And while a court is

generally constrained to the allegations in the complaint when resolving a 12(b)(6) motion, it

"may take judicial notice of 'matters of public record' without converting a motion to dismiss

into a motion for summary judgment."[22]

## II.    Analysis

Reed moves to amend his complaint to (1) supplement his equal-protection claim with

more facts identifying the inmates that he claims were treated differently than he was and (2) add

a due-process claim.  But such amendment would be futile because Reed cannot demonstrate that

he is entitled to relief under either legal tenet.  I already dismissed his due-process claim with

prejudice because he has no liberty interest in parole eligibility, nor can a state-law violation

---

[17] *Id.*

[18] *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998).

[19] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[21] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)) (emphasis in original).

[22] *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)).

alone support a due-process claim.[23]  And the Nevada law at the time Reed claims that he was injured would not have put a reasonable official on notice that she was violating his rights by indiscriminately applying good-time credits to some inmates' sentences but not others.[24]

Qualified immunity shields government officials "from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[25]  "When, as here, defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), 'dismissal is not appropriate unless [the court] can determine, based on the complaint itself, that qualified immunity applies.'"[26]  While a district court may evaluate the qualified-immunity prongs in any order, it should avoid starting with the first prong "when it would unnecessarily wade into 'difficult questions' of constitutional interpretation that 'have no effect on the outcome of the case.'"[27]  Conduct is immunized if either prong is not satisfied.[28]

To show that conduct violated a clearly established law, the plaintiff must prove that, at the time of the alleged misconduct, "the contours of [the] right [were] sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[29]

---

[23] ECF No. 7 at 4–5.

[24] Because I find that Larsen is entitled to qualified immunity, I need not and do not reach her remaining dismissal arguments.

[25] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

[26] *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)).

[27] *Sjurset v. Button*, 810 F.3d 609, 615 (9th Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009)).

[28] *Martinez v. City of Clovis*, 943 F.3d 1260, 1270 (9th Cir. 2019).

[29] *Ashcroft*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (quotation and brackets omitted); *see Robinson v. York*, 566 F.3d 817, 826 (9th Cir. 2009); *Sampson v. Cnty. of Los Angeles by and through Los Angeles Cnty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012, 1018–19 (9th Cir. 2020) ("A constitutional right is 'clearly established' if

While this does not require the plaintiff to cite a case "directly on point," the "existing precedent must have placed the statutory or constitutional question beyond debate."[30]  The United States Supreme Court routinely instructs courts to not determine whether a right is clearly established "at a high level of generality."[31]  Instead, the law at issue must be specific to the facts at hand.[32] This requires a court to look at binding precedent to determine if "a reasonable [official] would have had fair notice that the action was unlawful . . . "[33] before turning to "all available decisional law."[34]

Larsen argues that she is entitled to qualified immunity because even if Reed could establish that he was treated differently than other prisoners, it was not clearly established that applying good-time credits to only inmates with a court order to do so would violate the Equal Protection Clause because the Nevada Supreme Court didn't resolve that legal question until after Reed had been paroled.  Reed does not dispute that *Williams* was decided after the period relevant to his claim.  Nor does he offer any reason that Larsen is not entitled to qualified immunity.  Instead, he contends that Larsen knew or should have known what the correct

---

'every reasonable official would have understood that what he is doing violates that right' at the time of his conduct." (citation omitted)).

[30] *Ashcroft*, 563 U.S. at 741.

[31] *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).

[32] *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft*, 563 U.S. at 742).

[33] *Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2013) (quoting *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1060–61 (9th Cir. 2003)) (brackets omitted).

[34] *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996) (citing *Lum v. Jensen*, 876 F.2d 1385, 1387 (9th Cir. 1989)).

interpretation of the law was, but she chose to apply his good-time credits to his maximum date only.

The Fourteenth Amendment's Equal Protection Clause prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws."  Generally, this prohibits "governmental classifications that 'affect some groups of citizens differently than others.'"[35]  A plaintiff who does not "allege[] class-based discrimination" may still state an equal-protection claim as a "class of one."[36]  To state an equal-protection claim as a "class of one," the plaintiff must allege that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."[37]

Before *Williams*, there was no binding precedent requiring the NDOC to apply good-time credits to an inmate's minimum sentence.[38]  As Reed's amended complaint makes clear, before *Williams*, the NDOC applied good-time credits only to the minimum sentences of inmates who had obtained a court order requiring it to do so.  It did so because the State of Nevada disagreed with the legal interpretation that was being argued by inmates like Reed that "NRS 209.4465(7)(b) requires credits be applied to [their] eligibility for parole (i.e., [their] minimum

---

[35] *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (quoting *McGowan v. Maryland*, 366 U.S. 420, 425 (1961)).

[36] *Id.* (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

[37] *Vill. of Willowbrook*, 528 U.S. at 564 (citation omitted).

[38] While Nevada had issued an order in *Vonseydewitz v. Legrand*, 2015 WL 3936827 (Nev. Jun. 24, 2015), on the same grounds, that decision was not binding and did not reflect a change in Nevada law.  *See* Nev. R. App. P. 36(c)(2) ("An unpublished disposition, while publicly available, does not establish mandatory precedent except in a subsequent stage of a case in which the unpublished disposition was entered, in a related case, or in any case for purposes of issue or claim preclusion or to establish law of the case."); *see also Hines v. Youseff*, 914 F.3d 1218, 1230 (9th Cir. 2019), *cert. denied sub nom. Smith v. Schwarzenegger*, 140 S. Ct. 159 (2019) ("[W]e have . . . noted that 'it will be a rare instance in which, absent any published opinions on point or overwhelming obviousness of illegality, we can conclude that the law was clearly established on the basis of unpublished decisions only.'").

terms."[39]  So "the state of the law" would not give an NDOC official "fair warning" that applying the law in that way "was unconstitutional."[40]  Although a prisoner's general right to equal protection was clearly established,[41] construing the allegations in Reed's favor, it's clear from the face of his complaint that a reasonable official would not understand that applying good-time credits only when required by the court was a violation of that right.[42]

Reed also maintains that Larsen "should have known" that she was unlawfully applying Nevada law because she was a Nevada official.  At best, Reed's claim is that the NDOC was incorrectly applying the law for some inmates, but not others.  But a misapplication of the law alone cannot establish the disparate treatment needed to sustain an equal-protection claim.[43]  So even if Larsen should have known that she was misapplying good-time credits to some sentences but not to others, Reed cannot establish that Larsen violated any constitutional right.  Because no set of facts could remedy this fundamental flaw in Reed's equal-protection claim or overcome

---

[39] *See Williams*, 402 P.3d at 1262; *id.* (noting the state's argument that "both NRS 209.4465(7)(b) and NRS 213.120(2) require that she serve her minimum terms without any reduction for credits earned [under] NRS 209.4465.  The State argues . . . that the Legislature intended for prisoners to serve the minimum term imposed before becoming eligible for parole.").

[40] *Sampson*, 974 F.3d at 1019 (alteration in original) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

[41] *Turner v. Safley*, 482 U.S. 78, 84 (1987) ("Prison walls do not form a barrier separating prison inmates from the protections of the Constitution.  Hence, for example, prisoners . . . are protected against invidious racial discrimination by the Equal Protection Clause of the Fourteenth Amendment . . . ." (citation omitted)).

[42] I decline Larsen's invitation to convert this motion to dismiss into one for summary judgment.  And because I grant qualified immunity under Rule 12(b)(6), I deny as moot Reed's motion for discovery under Rule 56(d).

[43] *Cf. Beck v. Washington*, 369 U.S. 541, 554 (1962) (holding that in the context of judicial determinations, "misapplication cannot be shown to be an invidious discrimination.  We have said time and time again that the Fourteenth Amendment does not 'assure uniformity of judicial decisions . . . .'").

1  qualified immunity, I grant Larsen's motion to dismiss and deny Reed's motion for leave to

2  amend as amendment would be futile.[44]

3                                    **Conclusion**

4       IT IS THEREFORE ORDERED that Larsen's motion to dismiss **[ECF No. 26] is**

5  **GRANTED**.  And because amendment would be futile, it is further ordered that Reed's motion

6  for leave to amend **[ECF No. 31] is DENIED**.  Reed's claims against defendant Ronda Larsen

7  are **DISMISSED with prejudice based on qualified immunity**.  The Clerk of Court is **directed**

8  **to enter judgment accordingly and TERMINATE Larsen as a defendant in this action** as no

9  claims remain against her.

10      This case proceeds against defendants Baker and Hill only.  Therefore IT IS FURTHER

11 ORDERED that this matter is **REFERRED to the magistrate judge for further order with**

12 **respect to service for the remaining defendants**.

13      IT IS FURTHER ORDERED that Reed's motion for more time or discovery **[ECF No.**

14 **29] is DENIED as moot**.

15

16                                        _____
                                          U.S. District Judge Jennifer A. Dorsey

17                                                         August 23, 2021

18

19

20

21

22
    _____
23  [44] To the extent that Reed alleges a claim against Larsen in her official capacity, his claim is also
    dismissed—"state officials sued in their official capacities are not 'persons' within the meaning
    of § 1983," unless the plaintiff seeks prospective injunctive relief.  *Doe v. Lawrence Livermore*
    *Nat. Lab'y*, 131 F.3d 836, 839 (9th Cir. 1997).